**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHERYL MCCOY, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| PLAINTIFF, | ) ) | |
| vs. | ) ) | Case No. 18-cv-01035 |
| MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC; and ENCORE CAPITAL GROUP, INC. | ) ) ) ) | |
| | ) | <u>Jury Demanded</u> |
| DEFENDANTS. | ) | |

## <u>CLASS COMPLAINT</u>

Plaintiff, Cheryl McCoy, individually and on behalf of a putative class, bring this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and alleges:

## <u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

## <u>STANDING</u>

3. Defendants made false representations regarding a judgment against Plaintiff and her subsequent obligations with respect to that judgment.

4. Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any false representations. *E.g. Genova v. IC Sys., Inc.*, No. CV 16-5621, 2017 WL 2289289, at *3 (D.N.J. May 25, 2017).

1

5. Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6. Plaintiff, Cheryl McCoy ("Plaintiff"), is a resident of the State of Illinois from whom Defendants attempted to collect a delinquent consumer debt allegedly owed for a defaulted FIA Card Services, N.A. consumer credit account. Plaintiff is thus a "consumer" as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

7. Defendant, Midland Funding LLC ("Midland"), is a Delaware limited liability company with its principal place of business at 3111 Camino Del Rio N, #1300, San Diego, CA 92108. It does or transacts business in Illinois. Its registered agent is Midland Credit Management, Inc., located at 1821 Walden Office Sq., Ste. 400, Schaumburg, IL 60173. (Exhibit A, Record from Illinois Secretary of State).

8. Midland holds a collection agency license from the State of Illinois. (Exhibit B, Record from Illinois Department of Financial & Professional Regulation).

9. Midland's principal purpose is the collection of debts, as it derives all of its revenue from purchasing and recovering portfolios of defaulted receivables from consumers. *See* SEC filings, Encore Capital Group, Inc., Annual Report (Form 10-K) (Dec. 31, 2016), available

at http://investors.encorecapital.com/phoenix.zhtml?c=115920&p=irol-reportsannual (viewed November 16, 2017).

10. Midland files hundreds of cases each month against consumers in Illinois to recover balances asserted to be due on defaulted credit card, medical, and utility accounts.

11. Thus Midland is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

12. Defendant, Midland Credit Management ("MCM"), is a Kansas corporation with its principal place of business at 3111 Camino Del Rio N, Suite 1300, San Diego, CA 92108-8875. MCM does or transacts business in Illinois. Its registered agent is Illinois Corporation Service Co., located at 801 Adlai Stevenson Drive, Springfield, IL 62703. (Exhibit C, Record from Illinois Secretary of State).

13. MCM holds a collection agency license from the State of Illinois. (Exhibit D, Record from Illinois Department of Financial & Professional Regulation).

14. MCM regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is therefore a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

15. Encore Capital Group, Inc. ("Encore") is a Delaware Corporation. It does not maintain a registered agent in Illinois. Its registered agent and office is Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808. (Exhibit E, Record from the Delaware Secretary of State).

16. Encores' SEC filing for 2017 states in part:

> We purchase portfolios of defaulted consumer receivables at deep discounts to face value and manage them by working with individuals as they repay their obligations and work toward financial recovery. Defaulted receivables are consumers' unpaid financial commitments to credit originators, including banks,

3

credit unions, consumer finance companies, commercial retailers, and telecommunication companies. Defaulted receivables may also include receivables subject to bankruptcy proceedings.

17. Encore's primary purpose is the collection of debt as it derives a majority of its revenue from the collection of defaulted consumer receivables and it is thus a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

18. According to Defendants, Plaintiff incurred an alleged debt for goods and services used for personal purposes, originally for a FIA Card Services, N.A. consumer credit card account ("alleged debt"). The alleged debt is a "debt" as that term is defined at § 1692a(5) of the FDCPA.

19. Due to her financial circumstances, Plaintiff could not pay any debts, and the alleged debt went into default.

20. Midland subsequently purchased the alleged debt, and retained MCM to assist with collection.

21. Midland sued Plaintiff in the Circuit Court of Cook County in an attempt to collect the alleged debt.

22. Plaintiff at the time was unable to afford an attorney and did not understand her rights and obligations with respect to the lawsuit, and Midland obtained a default judgment against her on November 17, 2017.

23. Shortly thereafter, MCM sent a letter ("Letter") directly to Plaintiff regarding the alleged debt (Exhibit F, Collection Letter).

24. The Letter conveys information regarding the alleged debt, including an account number, the identity of the original creditor and a current balance.

25. The Letter is thus a "communication" as that term is defined at §1692a(2) of the FDCPA.

26. The Letter states in relevant part:

> **We have the right to inquire regarding the existence and location of assets, and your ability to satisfy the judgment.**
>
> **Complete the enclosed Financial Disclosure Form and send your response via email to FWLResponses@mcmcg.com. Alternatively, you may mail the form to P.O. Box 2121, Warren, MI 48090.**

(Exhibit F, emphasis added)

27. MCM is correct that Midland has the right to inquire regarding the existence and location of Plaintiff's assets.

28. Specifically, according to 735 ILCS 5/2-1402, Midland is:

> …entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment. **A supplementary proceeding shall be commenced by the service of a citation issued by the clerk. The procedure for conducting supplementary proceedings shall be prescribed by rules….**

29. Instead of following the rules prescribed by statute, including the service of a proper citation, MCM instead included a form with its Letter, entitled "Financial Disclosure Form."

30. MCM's Letter commands Plaintiff to complete the form and return it by email or mail.

31. MCM advises Plaintiff to contact an attorney if she has questions about the form.

32. The Letter and the Form are peppered with legal terminology to further give the impression of legal process, including "Judgment Creditor," "exempt property," and a declaration as to the truth and correctness of the information provided by the "Judgment Debtor."

33. Plaintiff, and the unsophisticated consumer, would believe that the form was legal process, sent as a result of the default judgment, and that she was required to fill it out and return it.

34. The Financial Disclosure Form was not legal process. Plaintiff was under no obligation to voluntarily turn over financial information to Defendants.

35. 15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

> **. . . (13) The false representation of implication that documents are legal process. . .**

36. Defendants falsely represented a voluntary financial disclosure form as legal process, in violation of 15 U.S.C. § 1692e(13), in an attempt to coerce Plaintiff into disclosing her income and assets.

37. The Letter, coupled with the Financial Disclosure Form, conveys to the unsophisticated consumer that completing the form is mandatory and court ordered.

38. Defendants' request for Plaintiff's personal financial information, should be done through the appropriate legal channels. Defendant is attempting to make and end run around the court system.

39. 15 U.S.C. § 1692f of the FDCPA provides as follows:

**Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.**

40. Defendants used unconscionable means to collect a debt, in violation of 15 U.S.C. §1692f, when they communicated to Plaintiff that she must fill out a Financial Disclosure Form as a result of a judgment obtained against her.

41. Had Defendants issued a proper citation, it would have included information on Plaintiff's rights under Illinois Statute. Further, had the citation taken place at the Court, instead of through Defendants' informal process, Plaintiff would have had access to court resources for *pro-se* defendants, including the Collection Advice Desk, located in the same room in which a properly noticed Citation take place.

42. After commanding Plaintiff to fill out the Financial Disclosure Form, the Letter states, in relevant part:

If you wish to resolve the matter ***voluntarily***, it's not too late.

(Exhibit F, emphasis added)

43. The Letter than offers several payment options for Plaintiff that are voluntary.

44. The alternative to the voluntary resolution of making payments is, by implication, the involuntary action of filling out the Financial Disclosure Form.

45. In reality, both options were voluntary.

46. The use of carefully worded statements (i.e. "we have the right to inquire", "money and property which may be used to pay the judgment," etc.) that are designed to conceal legal rights from a consumer, violate the FDCPA as a matter of law. *See Pantoja v. Portfolio Recovery Assocs., LLC*, No. 15-1567, 2017 WL 1160902, at *6 (7th Cir. Mar. 29, 2017) (holding

that the failure to inform a consumer that a partial payment on an alleged debt would revive the statute of limitations was deceptive).

47. Violations of the FDCPA which would influence a consumer's decision to pay a debt in response to a dunning letter, are material. *Boucher v. Fin. Sys. of Green Bay, Inc.*, No. 17-2308, 2018 WL 443885, at *2 (7th Cir. Jan. 17, 2018) (citing *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009)). Here, Defendants' statements that Plaintiff must either start making payments or turn over information regarding her assets could cause her to make arrangements to pay the alleged debt in an effort to avoid the disclosure, and subsequent potential embarrassment with her employer.

48. Midland bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including MCM. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. Apr. 7, 2016).

49. Encore bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Midland and MCM. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 WL 1382174, at *7 (7th Cir. Apr. 7, 2016).

50. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

**CLASS ALLEGATIONS**

51. Plaintiffs brings this action individually and as a class on behalf of (1) all persons similarly situated in the State of Illinois (2) from whom Defendants attempted to collect on a judgment (3) by sending a letter similar to Exhibit F (4) which included a Financial Disclosure

8

Form (5) sent during a period one year prior to the filing of this action and ending 20 days after the filing date of this Complaint.

52. As Exhibit F is a form letter, the Class likely consists of more than 40 persons from whom Defendants attempted to collect a judgment using a letter substantially similar to Group Exhibit F.

53. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

54. The prosecution of separate actions by individual members of the Class would create a risk inconsistent or varying adjudications with respect to individual members of the Class, and would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests.

55. Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendants' conduct was perpetrated on all members of the Class and will be established by common proof.

56. Moreover, Plaintiff has retained counsel experienced in class action litigation including class actions brought under the FDCPA.

## COUNT I- FAIR DEBT COLLECTION PRACTICES ACT

57. Plaintiff re-alleges above paragraphs as if set forth fully in this count.

58. Defendants falsely represented a voluntary financial disclosure form as legal process, in violation of 15 U.S.C. § 1692e(13), in an attempt to coerce Plaintiff into disclosing her income and assets.

59. Defendants used unconscionable means to collect a debt, in violation of 15 U.S.C. §1692f, when they communicated to Plaintiff that she must fill out a Financial Disclosure Form as a result of a judgment obtained against her.

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and the Class, and against Defendants as follows:

- A. Statutory damages to Plaintiff and the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);
- B. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);
- C. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

By: s/Celetha Chatman
One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
Holly McCurdy
Sarah Barnes
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 514
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com