UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL McCOY, individually and on behalf of a class of similarly situated individuals,<br><br>                       Plaintiff,<br><br>vs.<br><br>MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC., and ENCORE CAPITAL GROUP, INC.,<br><br>                       Defendants. | 18 C 1035<br><br>Judge Gary Feinerman |

**MEMORANDUM OPINION AND ORDER**

Cheryl McCoy alleges that a collection letter she received from Midland Credit Management, Inc. violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Doc. 1. (There are other defendants, but the claims against them rise or fall with the claim against Midland.) With discovery closed, the parties cross-move for summary judgment, Docs. 36, 62, and McCoy moves for class certification, Doc. 41. Midland's summary judgment motion is granted, McCoy's summary judgment motion is denied, and McCoy's class certification motion is denied as moot.

## Background

Because summary judgment will be granted to Midland, the facts are sets forth as favorably to McCoy as permitted by the record and Local Rule 56.1. *See Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 824 F.3d 645, 647-48 (7th Cir. 2016). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 636 (7th Cir. 2018).

1

McCoy defaulted on a credit card account. Doc. 58 at ¶¶ 8-9. The account's owner placed the account with Midland for servicing, and Midland sought to collect the amount owed. *Id*. at ¶¶ 11-13. Only Midland communicated with McCoy about the account. *Id*. at ¶ 14. McCoy received eighteen letters from Midland, each with Midland's name, logo, and address at the top. *Id*. at ¶ 15.

In January 2015, McCoy agreed to a payment plan, but one of her checks was returned for insufficient funds. *Id*. at ¶ 16. She agreed to a second payment plan in March 2015, but again one of her checks was returned for insufficient funds. *Id*. at ¶ 17. In November 2015, Midland transferred the account to its internal collections department. *Id*. at ¶ 18.

On November 7, 2016, the account's owner, represented by Midland's counsel, sued McCoy to collect on the account. *Id*. at ¶ 19. On March 22, 2017, the parties reached a settlement, and McCoy signed an agreed order dismissing the case with leave to reinstate. *Id*. at ¶¶ 20-23. The agreement set out a payment plan and provided that the suit was subject to reinstatement if McCoy defaulted. *Id*. at ¶¶ 23-24. The order also provided: "In the event of reinstatement … , [the account owner] shall be entitled to judgment on the date of hearing of its Motion for the balance prayed for on the Complaint, less payments to date thereof." *Id*. at ¶ 25 (quoting Doc. 38-9 at ¶ 3). McCoy knew that entry of a judgment could be a consequence of failing to make payments. *Id*. at ¶ 29. After McCoy failed to make the required payments, the case was reinstated on November 7, 2017, and the court entered judgment against her in the amount of $1,008.62 plus costs. *Id*. at ¶¶ 26-28.

Midland then sent McCoy a letter dated December 1, 2017, the first page of which is reproduced here:



Doc. 38-12 at 1; Doc. 58 at ¶ 30.

The letter began: "On November 07, 2017 a judgment was entered against you in the amount of $1,347.62. We have the right to inquire regarding the existence and location of assets, and your ability to satisfy the judgment." Doc. 38-12 at 1. The letter then stated: "Complete the

3

enclosed Financial Disclosure Form and send your response [by email or mail]." *Ibid*. (emphasis omitted). The enclosed disclosure form sought McCoy's contact information and asked nine questions about her income and assets. *Id*. at 3-4; Doc. 58 at ¶ 33.

The letter continued: "If you wish to resolve this matter voluntarily, it's not too late. Call (866) 300-8750 if you would like to discuss one of the payment options listed below." Doc. 38-12 at 1 (emphasis omitted). The listed options were paying in full or agreeing to a monthly payment plan. *Ibid*. The letter warned: "If we are unable to reach a voluntary resolution with you, [the account owner] may seek to enforce the judgment in accordance with applicable state laws." *Ibid*. (emphasis omitted).

## Discussion

McCoy alleges that Midland violated §§ 1692e(13) and 1692f of the FDCPA by falsely implying that the letter and enclosed financial disclosure form were legal process. Doc. 57 at 2, 6-11. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see Ruth v. Triumph P'ships*, 577 F.3d 790, 799-800 (7th Cir. 2009). This provision, essentially a "rule against trickery," *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007), sets forth "a nonexclusive list of prohibited practices" in sixteen subsections, *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014). Although "a plaintiff need not allege a violation of a specific subsection in order to succeed in a § 1692e case," *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012), McCoy invokes subsection (13), which proscribes "[t]he false representation or implication that documents are legal process," 15 U.S.C. § 1692e(13). Section 1692f proscribes the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Because McCoy's § 1692f claim rests on the

4

same premise—that Midland's letter was deceptive—as her § 1692e claim, the two claims rise or fall together.

The Seventh Circuit "has consistently held that with regard to 'false, deceptive, or misleading representations' in violation of § 1692e of the FDCPA, the standard is … whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer if the consumer is not represented by counsel." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 603 (7th Cir. 2016); *see also Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (noting that FDCPA claims "are evaluated under the objective 'unsophisticated consumer' standard"). This standard protects a consumer who "may be uninformed, naïve, or trusting," but who nonetheless "possess[es] rudimentary knowledge about the financial world." *Gruber*, 742 F.3d at 273 (internal quotation marks omitted). Though unsophisticated, the reasonable consumer "is not a dimwit" and "is capable of making basic logical deductions and inferences." *Lox*, 689 F.3d at 822 (internal quotation marks omitted).

As the Seventh Circuit explained in *Ruth*, statements alleged to be false or misleading under § 1692e fall into three categories. The first category consists of statements that are "plainly, on their face, … not misleading or deceptive. In these cases, [the court] do[es] not look to extrinsic evidence to determine whether consumers were confused. Instead, [the court] grant[s] dismissal or summary judgment in favor of the defendant based on [its] own determination that the statement complied with the law." *Ruth*, 577 F.3d at 800. The second category consists of statements that "are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer. In these cases, … plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Ibid*. The third

category consists of statements that are "so clearly confusing on [their] face[s] that a court may award summary judgment to the plaintiff on that basis." *Id*. at 801.

McCoy conceded at oral argument on the present motions, Doc. 84, that she lacks extrinsic evidence that Midland's letter would be misleading to an unsophisticated consumer. This case therefore turns on the question whether the letter falls within the third *Ruth* category. If it does, McCoy is entitled to summary judgment. *See Ruth*, 577 F.3d at 801 (noting that "a court may award summary judgment to the plaintiff" where the challenged statement falls within the third category) (internal quotation marks omitted). But if the letter falls within the first or second *Ruth* categories, Midland is entitled to summary judgment. *See Lox*, 689 F.3d at 822 ("[S]ince Lox did not present any extrinsic evidence at the summary judgment stage, he must show that the statement is plainly and clearly misleading on its face, thus eliminating any need for evidence of its deceptive nature.").

Even if Midland's letter could reasonably be read to misleadingly imply that it (either alone or with the enclosed disclosure form) is "legal process," 15 U.S.C. § 1692e(13), the letter would be "susceptible to more than one interpretation," *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016), one misleading and one not, making it "possibly" misleading but not misleading "on [its] face" and thus placing it in the second *Ruth* category, *Ruth*, 577 F.3d at 800. That is because "an unsophisticated, but reasonable, consumer," *Bravo*, 812 F.3d at 603, would not necessarily think that the letter is legal process—in other words, because the letter is not clearly confusing on its face as to whether it is legal process.

The FDCPA does not define "legal process," but it excludes from the definition of "debt collector" "any person while *serving* or attempting to *serve legal process* on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D) (emphasis

6

added). The FDCPA's definition of "debt collector" makes clear that the term "legal process" refers to a category of documents that can be "serve[d]," which aligns with the term's ordinary meaning. *See Process*, Black's Law Dictionary (11th ed. 2019) (defining "legal process" as "[p]rocess validly issued," where "process" is "[a] summons or writ, esp. to appear or respond in court"). Courts normally presume that "when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019). Because there is no reason in the FDCPA or elsewhere to believe that Congress intended the term "legal process" to mean one thing in § 1692e(13) and another in § 1692a(6)(D), it follows that "legal process" means the same thing in § 1692e(13) as it does in § 1692a(6)(D). And from that it follows that McCoy's submission that the term "legal process" in § 1692e(13) encompasses documents that "invoke the court's authority," imply that "they carry the authorization of the court," or imply that they are "mandatory and a part of the legal process stemming from" a judgment, Doc. 82 at 3-6, gives the term too broad a meaning. But even if McCoy's capacious definition were correct, an unsophisticated consumer would not necessarily read the letter (again, alone or together with the enclosed disclosure form) to falsely convey or imply any of those things. Instead, an unsophisticated consumer could reasonably read the letter as an attempt by Midland to collect on its judgment—or at least to obtain financial information that would help it do so—by offering a voluntary alternative to the account owner's returning to court to enforce the judgment.

For starters, there is every indication from the face of the letter that Midland sent it and none that a court sent it. Midland's logo, name, and contact information appear at the top of the letter, and the back of the letter discloses that it "is a communication from a debt collector" and "an attempt to collect a debt." Doc. 38-12 at 1-2. The letter provides an "internal legal account

7

number" alongside the "court file number," reinforcing the message that Midland is not the court and that Midland sent the letter. *Id*. at 1 (capitalization altered). Although the enclosed financial disclosure form does not repeat Midland's name, it directs questions to "*our* office at (866) 300-8750," which is the same number the letter gives for Midland, and the only file number on the disclosure form matches the number that the letter calls "internal." *Id*. at 1, 3 (emphasis added, capitalization altered). In addition, because the unsophisticated consumer has "a reasonable knowledge of her account's history," *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009), she would read Midland's eighteenth letter with the benefit of the context provided by the previous seventeen—all of which likewise had Midland's name, logo, and address at the top. Doc. 58 at ¶ 15. The historical context also included the opportunity to see what legal process actually looks like, for the unsophisticated consumer would know that she had been sued in and settled a collection action involving the account. *See Wahl*, 556 F.3d at 646.

      As to the letter's substance, an unsophisticated consumer could reasonably read it not as falsely invoking the court's authority, but as offering a way to resolve the debt without involving the court. The letter states that "[w]e have the right to *inquire*" regarding the information requested by the disclosure form. Doc. 38-12 at 1 (emphasis added). An unsophisticated consumer could reasonably interpret that assertion as communicating merely that Midland had the right to *ask* for her financial information, not that the court was compelling her to *answer*. That reading finds further support in the rest of the letter, which discusses ways of "resolv[ing] this matter voluntarily" before warning that "[i]f we [Midland] are unable to reach a voluntary resolution with you, [the account owner] may seek to enforce the judgment in accordance with applicable state laws." *Ibid*. (emphasis omitted). By distinguishing Midland's attempt to "reach a voluntary resolution" from the possibility that the account's owner will try to "enforce the

8

judgment in accordance with applicable state laws," the warning puts further distance between Midland's letter and the court's authority.

Given all this, an unsophisticated consumer easily could conclude that the letter and disclosure form came from Midland, not a court, and easily could understand the letter to present a choice: "Do what we ask, or run the risk that the owner will ask the court to make you." On that reading, the letter does not misleadingly suggest that it is legal process.

McCoy retorts that the disclosure form requested essentially the same information that she could have been compelled to provide through a citation to discover assets, under threat of contempt. Doc. 57 at 7; *see* 735 ILCS 5/2-1402 ("A judgment creditor … is entitled to prosecute supplementary proceedings … to discover assets or income of the debtor not exempt from the enforcement of the judgment … . A supplementary proceeding shall be commenced by the service of a citation issued by the clerk. … All citations … shall have the following language, or language substantially similar thereto, stated prominently on the front, in capital letters: 'IF YOU FAIL TO APPEAR IN COURT AS DIRECTED IN THIS NOTICE, YOU MAY BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT IN THE COUNTY JAIL.'"). From this premise, McCoy contends that the letter violated §§ 1692e(13) and 1692f by attempting to "gleefully skip the citation to discover assets procedure in state court and proceed … directly to seizing [her] assets." Doc. 57 at 8-9; Doc. 63 at 13-14. But McCoy neither explains nor cites authority for the proposition that the FDCPA prohibits asking a consumer to voluntarily provide information that a court could compel her to provide, thus forfeiting the point. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are

9

arguments unsupported by legal authority."). In any event, McCoy's contention fails on the merits, as there is nothing inherently "false," "deceptive," "misleading," "unfair," or "unconscionable" about attempting to resolve a dispute without going to court or about seeking information that would facilitate such a resolution. 15 U.S.C. §§ 1692e, 1692f; *see also* Doc. 82 at 5-6 (McCoy conceding that "debt collectors can attempt to resolve judgments against debtors without resorting to formal citation proceedings," so long as they do not falsely present voluntary actions as mandatory).

McCoy also argues that Midland's letter creates the false impression that completing the financial disclosure form is mandatory because it "commands" the recipient either to complete the form or to agree to a payment plan. Doc. 57 at 9-11; Doc. 63 at 15-16. An unsophisticated consumer would not necessarily read the letter that way. Granted, the letter directs the recipient to "[c]omplete the enclosed Financial Disclosure Form" without *explicitly* saying that she can choose not to do so. Doc. 38-12 at 1 (emphasis omitted). But in *context*, an unsophisticated consumer reasonably could read that instruction as a request backed by the possibility that if she does not comply, the account's owner will "seek to enforce the judgment in accordance with applicable state laws." *Ibid*. (emphasis omitted). Thus, the letter reasonably could be read to request information from the recipient and to truthfully imply that if she refuses to provide it, she might be compelled by a court to do so. On that reading, the letter is not misleading and does not misleadingly suggest that it is legal process. *See Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765-67 (7th Cir. 2018) (holding that a collection letter's statement that the settlement it offered "may have tax consequences" was not misleading because the statement was true "as a general matter" and did not signal whether "tax consequences [were] possible or likely … in [any] particular debtor's circumstances") (emphasis omitted).

Because Midland's letter is susceptible to a reasonable and legally compliant interpretation, it falls, at worst, within the second *Ruth* category. *See Janetos*, 825 F.3d at 323 (noting that a letter "susceptible to more than one interpretation," one misleading and one innocent, falls within the second *Ruth* category). Accordingly, McCoy's failure to adduce "extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive" entitles Midland to summary judgment. *Ruth*, 577 F.3d at 800; *see also Lox*, 689 F.3d at 822 (holding that where a letter is not in the third category, the plaintiff cannot survive summary judgment without extrinsic evidence).

## Conclusion

Midland's summary judgment motion is granted, McCoy's summary judgment accordingly is denied, and McCoy's class certification motion is denied as moot. *See Pumputyte v. United Airlines, Inc.*, 2018 WL 1240314, at *5 (N.D. Ill. Mar. 9, 2018) ("Because her claims have been dismissed, [her] class certification motion … is denied.") (collecting cases); *see also Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013) ("[W]hen … [a] suit can quickly be shown to be groundless, it may make sense for the district court to skip certification and proceed directly to the merits."). Judgment will be entered in favor of Midland and against McCoy.

July 2, 2019

United States District Judge